1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

BARBARA S. LINTHICUM,

11

Plaintiff,

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

Defendant.

16

CASE NO. 3:16-cv-05048 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17       This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18  Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19  Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20  Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 14, 15).

21       After considering and reviewing the record, the Court concludes that the ALJ

22  erred in his review of the medical evidence. The ALJ failed to discuss, adopt or reject

23  specifically the doctors' assessments of moderate limitations, even though such moderate

24

limitations are defined on the forms utilized as "significant interference" with the ability to perform work related tasks. The Court finds persuasive plaintiff's argument that the ALJ appears to have mistakenly interpreted moderate limitations as limitations not having a significant impact on a claimant's ability to perform work activities, as this term is typically used by the Social Security Administration, instead of interpreting moderate limitations as they are defined on the forms used by the doctors.

The ALJ also failed to credit fully an opinion from an examining doctor, Dr. Griffin, solely with a finding that "Dr. Griffin did not have the opportunity to review the longitudinal record," however, this reasoning is contrary to the regulations and caselaw indicating that examining doctors' opinions generally are given more weight than the opinions from doctors who only examine the longitudinal record. This reasoning by the ALJ also is not specific, as the ALJ failed to cite a single aspect of the longitudinal record that contradicts the opinion from Dr. Griffin.

The ALJ also indicated that he was giving significant weight to the medical opinion from Dr. Platter, who opined that plaintiff suffered from reaching limitations, but as admitted by defendant, the ALJ did not include any limitations on reaching in the residual functional capacity finding.

The ALJ also erred when evaluating plaintiff's statements and allegations. Because the ALJ's many errors in his written opinion are not harmless, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

*//*

BACKGROUND

Plaintiff, BARBARA S. LINTHICUM, was born in 1964 and was 45 years old on the amended alleged date of disability onset of September 1, 2010 (*see* AR. 11, 163-64). Plaintiff has an associate's degree in accounting (AR. 38).   Plaintiff has work experience as a customer service agent, paratransit driver and school bus driver (AR. 193-203).

According to the ALJ, plaintiff has at least the severe impairments of "hypertension; asthma; hearing loss; dysthymic disorder; panic disorder; [and] generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c))" (AR. 13).

At the time of the hearing, plaintiff was single and living with her 22 year-old son (AR. 38).

PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* AR. 70-83, 85-99). Plaintiff's requested hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on April 3, 2014 (*see* AR. 31-68). On May 2, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 8-30).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether the ALJ properly evaluated the opinions of Dan Neims, Psy.D.; (2) Whether the ALJ properly evaluated the opinions of Howard Platter, M.D.; (3)  Whether the ALJ properly evaluated the opinion of Enid Griffin, Psy.D.; (4) Whether the ALJ properly evaluated the opinions of Melissa Fogarty, ARNP; (5) Whether the ALJ properly evaluated

plaintiff's credibility; and (6) Whether the ALJ properly considered all of plaintiff's impairments (*see* Dkt. 11, p. 1).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

(1)     **Whether or not the ALJ properly evaluated the opinions of Dr. Dan Neims, Psy.D., examining doctor.**

When an opinion from an examining doctor is contradicted by other medical opinions, the examining doctor's opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing

*Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Dr. Dan Neims, Psy.D. examined plaintiff in November, 2011 (AR. 705-21). He diagnosed plaintiff with major depressive episode, recurrent, marked; panic disorder with agoraphobia; and anxiety disorder NOS (not otherwise specified) (AR. 706). He indicated that there were multiple symptoms that plaintiff was experiencing that he observed personally (*id*.). For example, he noted that she suffered from attentional disruption, which he opined had a moderate to marked level of severity on her work activities and that it slowed her processing and resulted in "periods of poorly sustained attention and concentration with patterns of task abandonment centering on MSE tasks involving mathematics and working memory" (*id*.). He also indicated that he observed plaintiff's symptoms of depression, which he opined had a marked level of severity on her work activities, which on this form indicated a very significant interference on her work activities, and he noted that these symptoms affect her work activities in that her depressive "affect and brooding predominate, with periodic problems with more vegetative symptoms of depression" (*id*.). On the form utilized by Dr. Neims, a moderate limitation indicates a "significant interference" on the ability to perform basic work-related activities.

Regarding specific functional limitations, Dr. Neims opined that plaintiff suffered from moderate limitations, that is significant interference, in a number of areas including the ability to learn new tasks; the ability to perform routine tasks without undue supervision; the ability to be aware of normal hazards and take appropriate precautions; the ability to communicate and perform effectively in a work setting with limited public contacts; and the ability to maintain appropriate behavior in a work setting (AR. 707). Regarding what plaintiff is able to do despite her impairments, Dr. Neims opined that plaintiff is "slowed with prominent vegetative symptoms and apparent performance anxiety [and that she is] poorly groomed and seems slow in processing verbal information and expressing her thoughts" (AR. 708).

On her mental status examination ("MSE"), plaintiff was unable to perform serial threes or serial sevens, and Dr. Neims opined that plaintiff's affect was blunted, flat and restricted/constricted; and that her mood was dysphoric and anxious (AR. 713, 715). Dr. Neims opined that plaintiff is "impaired from sustained gainful employment" (AR. 715).

The ALJ noted that when assessing specific functional limitations, Dr. Neims opined that plaintiff could perform simple and routine tasks, and indicated that he provided "good weight" to Dr. Neims' opinion (AR. 21-22). The ALJ also noted Dr. Neims' opinion that mental health intervention would be likely to restore or substantially improve plaintiff's ability to work (AR. 708).

Although defendant contends that "the ALJ adequately accounted for Dr. Neims' opinions," defendant does not address plaintiff's argument that the ALJ failed to cover various areas of functional limitation opined by Dr. Neims (Dkt. 14, p. 5). As noted, Dr.

Neims opined that plaintiff suffered from moderate limitations in multiple areas of functioning (AR. 707; *see also* AR. 706). The only way in which the ALJ addressed these limitations is by noting that "Dr. Neims wrote that the claimant would have no more than moderate limitation in any other area of mental functioning  . . . ." (AR. 21). As argued by plaintiff, the ALJ appears to have concluded that moderate limitations do not need to be accounted for at all in the residual functional capacity ("RFC") (Dkt. 11, pp. 4-5). Indeed, there is no limitation in the RFC reflecting any of the areas in which Dr. Neims opined that plaintiff suffered from moderate limitation, including the ability to learn new tasks; the ability to perform routine tasks without undue supervision; the ability to be aware of normal hazards and take appropriate precautions; the ability to communicate and perform effectively in a work setting with limited public contacts; and the ability to maintain appropriate behavior in a work setting (AR. 707).

To take one example, as noted by plaintiff, because the ALJ found that plaintiff is unable to perform any past relevant work, in order to be able to work, she likely would need to be able to learn new tasks, an area in which Dr. Neims opined that plaintiff suffered from moderate limitation (*see* AR. 24, 707). However, there is no accommodation in plaintiff's RFC for this limitation (*see* AR. 15). Instead, the ALJ concluded that plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (AR. 25). Plaintiff argues that in doing so, the ALJ indicates that moderate limitations do not need to be accounted for in the RFC and plaintiff argues that the ALJ erred by ignoring Dr. Neims' opinion regarding plaintiff's moderate limitations, including her moderate limitation in the ability to learn

new tasks (Dkt. 11, p. 5). This argument is persuasive. So, too, is plaintiff's argument that the "ALJ treated Dr. Neims' rating of moderate as having the meaning typically used by Social Security" (Dkt. 11, p. 5 (quoting *Scherer-Huston v. Comm'r of Soc. Sec.*, No. 01:1:14-cv-00688-HZ, 2015 WL 1757145 at *8 (D. Or. Apr. 16, 2015) ("[T]he Social Security Administration defines 'moderate' as 'more than a slight limitation in this area but the individual is still able to function satisfactorily.'")). However, as noted by plaintiff, on the form utilized by Dr. Neims, "moderate limitation" indicates a "significant interference" (*see* AR. 707).

Plaintiff's argument that the ALJ failed to recognize that Dr. Neims' opinions regarding moderate limitations reflect significant interference is persuasive and is supported by the ALJ's characterization of these limitations as "no more than moderate;" is supported by the ALJ's failure to discuss specifically any of these opinions by Dr. Neims regarding significant limitations; and is supported by the ALJ's failure to include any of these moderate limitations reflecting significant interference into plaintiff's RFC, despite giving "good weight" to Dr. Neims' opinion (*see* AR. 15, 21-22).

For the reasons stated, the Court concludes that the ALJ erred by giving good weight to Dr. Neims' opinions, yet failing to discuss specifically any of his opinions regarding moderate limitations or significant interference, and by failing to include any provision in plaintiff's RFC on the basis of these limitations. The Court also concludes that this error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

1   (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

2   Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in

3   *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the

4   ultimate nondisability determination' and that 'a reviewing court cannot consider [an]

5   error harmless unless it can confidently conclude that no reasonable ALJ, when fully

6   crediting the testimony, could have reached a different disability determination.'" *Marsh*

7   *v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout*, 454 F.3d at 1055-

8   56).  In *Marsh*, even though "the district court gave persuasive reasons to determine

9   harmlessness," the Ninth Circuit reversed and remanded for further administrative

10  proceedings, noting that "the decision on disability rests with the ALJ and the

11  Commissioner of the Social Security Administration in the first instance, not with a

12  district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

13  

14         Here, for example, as noted, Dr. Neims opined that plaintiff suffered from

15  moderate limitation, or significant interference in her ability to learn new tasks, yet the

16  ALJ did not include this limitation in plaintiff's RFC, and instead found that she "is

17  capable of making a successful adjustment to other work [work other than her past

18  relevant work] that exists in significant numbers in the national economy" (AR. 24). A

19  reasonable ALJ, when crediting fully this limitation, as well as the other moderate

20  limitations in areas in which Dr. Neims' opined that plaintiff suffers from significant

21  interference in her ability to perform work-related activities, "could have reached a

22  different disability determination.'" *See Marsh*, 792 F.3d at 1173 (citing *Stout*, 454 F.3d

at 1055-56). Therefore, the error is not harmless and this matter must be reversed and remanded for reevaluation of the medical evidence.

Based on the record as a whole, the Court concludes that the ALJ, following remand of this matter, must reevaluate all the medical evidence in the record. However, the Court notes briefly some other areas of concern with respect to the medical evidence that should be addressed following remand of this matter.

Although both the ALJ and defendant indicate that Dr. Terilee Wingate, Ph.D. opined that plaintiff "could return to at least some form of gainful employment," (Dkt. 14, p. 4 (citing AR. 553-55); AR. 21), Dr. Wingate actually opined that "[w]ith mental health treatment [plaintiff] should be able to work" (AR. 554). Dr. Wingate's opinion that following mental health treatment, plaintiff should be able to work, by necessity, indicates that at the time Dr. Wingate provided her opinion, plaintiff was not yet able to work (*see id.*). The Court also notes that with respect to the opinions from Dr. Wingate, the ALJ, as he did with the opinions from Dr. Neims, appears to have dismissed her opinions regarding moderate limitations, noting that "Dr. Wingate found that the claimant had no more than moderate limitation in any area of mental functioning  . . . ." (AR. 21). As with the opinions of moderate limitations from Dr. Neims, the ALJ does not mention specifically any of the opinions from Dr. Wingate regarding moderate limitations even though the form utilized by Dr. Wingate also indicates that moderate limitations reflect "significant interference" with basic work related activities (*see* AR. 553). In addition, the ALJ does not appear to account for Dr. Wingate's self-written opinions (not simply checked boxes) that plaintiff's "depressed mood will impact her

ability to do routine tasks" and that plaintiff "has difficulty sustaining a daily/weekly work schedule due to depressed mood . . . ." (AR. 553). Regarding what plaintiff can do despite her limitations, Dr. Wingate wrote only that plaintiff can care "for personal needs and do[] a few routine tasks on a sporadic basis" (*id.*). This particular opinion does not appear to support the idea that plaintiff could sustain full time work, as that generally involves performing at least routine tasks on more than a sporadic basis (*see id*.). The ALJ provided "good weight" to this opinion without including all of Dr. Wingate's opinion regarding moderate limitations into the RFC and without providing any reason to reject the above quoted opinions.

> (2)   **Whether or not the ALJ properly evaluated the opinion of Dr. Enid Griffin, Psy.D.**

Similar to the opinion just discussed from Dr. Wingate, *see supra*, Dr. Griffin, an examining doctor, indicated her opinion that "at this time from a mental health standpoint, it is likely [plaintiff] would be able to engage in training and/or part-time employment and return to the work full-time in the future" (AR. 1098). Therefore, both of these doctors' opinions suggest that it is only in the future that plaintiff would have been able to perform full-time work activities, but that she could not do so contemporaneously with their opinions (*see* AR. 554, 1098).

The ALJ only provided one reason for failing to credit fully the opinion from Dr. Griffin -- "Dr. Griffin did not have the opportunity to review the longitudinal record" (AR. 22). However, as argued by plaintiff, this reliance by the ALJ does not reflect the fact that "Social Security regulations provide that an ALJ should generally give greater

weight to opinions of doctors who have personally examined the claimant," over those who simply have reviewed "the longitudinal record" (Dkt. 11, p. 7 (citing 20 C.F.R. § 404. 1527(c)(1); SSR 96-6p)). *See also Lester, supra*, 81 F.3d at 830 (An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician") (citations omitted). In addition, although the ALJ failed to credit fully Dr. Griffin's opinion by noting that she did not review the longitudinal record, as noted by plaintiff, "the ALJ failed to explain how the longitudinal record contradicted Dr. Griffin's opinion" (*id.* (citing AR. 22)).

For the aforementioned reasons, and based on the record as a whole, Court concludes that the ALJ also erred when evaluating the opinion of Dr. Griffin. The Court also finds persuasive plaintiff's argument that this error, too, is not harmless in "light of Dr. Griffin's conclusion that [plaintiff] was not capable of full-time work" (Dkt. 11, p. 8 (citing *Stout*, 454 F.3d at 1056)).

(3)     **Whether or not the ALJ properly evaluated the opinions of Dr. Howard Platter, M.D.**

Defendant acknowledges that Dr. Platter opined that plaintiff "would be limited in her ability to reach in front, to the side, or overhead with her right shoulder" (Dkt. 14, p. 9 (citing AR. 93)). The Court notes that defendant admits that the "ALJ gave this opinion [from Dr. Platter] significant weight, but did not include any limitations on reaching in the residual functional capacity finding (*id.* (citing AR. 15)). Although defendant argues that "this should not be a reason for remanding the case," the Court disagrees. This error, too, should be corrected following remand of this matter. The ALJ should either adopt

this limitation into plaintiff's RFC or explain explicitly why it is rejected. *See Flores*, 49 F.3d at 570-71 (quoting *Vincent*, 739 F.2d at 1395) (the Commissioner "may not reject 'significant probative evidence' without explanation").

(4)     **Whether or not the ALJ properly evaluated the opinions of Melissa Fogarty, ARNP.**

Defendant acknowledges that ARNP Fogarty opined that plaintiff "could probably tolerate a part-time job with limited distractions and public contact" (Dkt. 14, p. 8 (citing AR. 725)). However, unpersuasively, defendant contends that "it is apparent [that] the ALJ saw ARNP Fogarty's opinions as supporting the residual functional capacity finding, rather than detracting from it" (*id.*). As the RFC finding does not include any limitation to part-time work, this contention is without merit. It is unclear how the ALJ's finding that plaintiff is capable of full-time work is supported by ARNP Fogarty's opinion that plaintiff probably could tolerate part-time work. This error, too, should be corrected following remand of this matter. *See Turner, supra*, 613 F.3d at 1224 (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so'").

(5)     **Whether or not the ALJ properly evaluated plaintiff's credibility.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration,

*see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4.

In addition, the Court already has noted that when determining whether or not to credit plaintiff's testimony and allegations, the ALJ relied on a finding that plaintiff told her doctor that she left her last job due to downsizing, but defendant admits that this was an error, as plaintiff told her doctor that she left her last job due to medical problems (*see* AR. 19, 1096, Dkt. 14, p. 4). Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

(6)     **Whether or not the ALJ properly considered all of plaintiff's impairments.**

As already noted, the Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. The Court also notes plaintiff's contention that the ALJ erred in failing to consider all of plaintiff's impairments, including plaintiff's hearing loss, sleep apnea, obesity, and right shoulder impairment (Dkt. 11, pp. 9-12). The Court notes plaintiff's arguments that the ALJ failed to determine whether or not plaintiff's sleep apnea was a medically determinable impairment or if it was severe; that the ALJ failed to determine whether or not plaintiff's obesity was severe; and that the ALJ failed to determine whether or not plaintiff's right shoulder impairment was a medically determinable impairment or was severe. Plaintiff's arguments are persuasive, and these errors, too, should be corrected following remand of this matter.

1    All of plaintiff's impairments should be assessed anew following remand of this

2  matter.

3                                    CONCLUSION

4    Based on these reasons and the relevant record, the Court **ORDERS** that this

5  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

6  405(g) to the Acting Commissioner for further consideration consistent with this order.

7    **JUDGMENT** should be for plaintiff and the case should be closed.

8    Dated this 5th day of October, 2016.

9

10

11                                    J. Richard Creatura
                                      United States Magistrate Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 15